NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

11-6

DIXIE ROOFING & SHEET METAL COMPANY, INC.

VERSUS

ANITA HOLMES REEVES SIMON

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 232,908
HONORABLE DONALD T. JOHNSON, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

OSWALD A. DECUIR
JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of John D. Saunders, Oswald A. Decuir, and Marc T. Amy, Judges.

AFFIRMED.

Ronald J. Fiorenza
Provosty, Sadler, DeLaunay, Fiorenza & Sobel, APC
P. O. Box 1791
Alexandria, LA 71309-1791
(318) 445-3631
Counsel for Plaintiff/Appellee:
     Dixie Roofing & Sheet Metal Company, Inc.

**Staci Knox Villemarette**
**Cloyd, Wimberly & Villemarette, L.L.C.**
**P. O. Box 53951**
**Lafayette, LA 70505-3951**
**(337) 289-6906**
**Counsel for Defendant/Appellant:**
    **Anita Holmes Reeves Simon**

**DECUIR, Judge.**

Dixie Roofing and Sheet Metal, Inc. filed suit against Anita Holmes Reeves Simon to recover the balance owed on a roofing contract. Ms. Simon reconvened, alleging breach of contract and fraud and seeking damages for diminution of value of the property subject to the contract. After a bench trial, judgment was rendered in favor of Dixie, awarding the full amount of the balance remaining on the contract. Ms. Simon has appealed, and for the following reasons we affirm.

In 2001, Dixie was hired by J. Minos Simon, Sr., owner of the Pine Plaza Shopping Center in Pineville, to install a new roof on the shopping center following a hail storm which damaged the existing roof. On October 10, 2001, the parties agreed on a new roof with a twelve-year warranty at a cost of $149,510.00 and the work began shortly thereafter. Mr. Simon made a partial payment of $59,972.18 in 2002. Dixie completed its work in October of 2003 and forwarded the warranty papers and final invoice to Mr. Simon on December 8, 2003. The invoice requested payment of $89,877.82. At the time, Mr. Simon, a resident of Lafayette, was in the last stages of cancer; he did not respond to Dixie's request for payment.

After Mr. Simon's death in March of 2004, Dixie filed a lien against the shopping center for the unpaid balance. Dixie then sued Ms. Simon, Minos Simon's widow and the executrix of his estate, after she became the sole owner of the shopping center. In her answer, Ms. Simon asserted that Dixie breached the contract by not replacing the existing, damaged roof. She later alleged fraud and sought damages for diminution of value when she sold the shopping center for $100,000.00 less than a previous buy-sell agreement that fell through allegedly because of the on-going roof problems.

The trial court awarded Dixie the amount due on the contract, noting Ms. Simon's admission that she owes the money, and rejected Ms. Simon's allegations. The trial court found Ms. Simon's evidence insufficient to prove the leaks were ongoing and caused by Dixie's poor workmanship. She also did not meet her burden of proving fraud, as she did not participate in the contract negotiations between Dixie and her husband and simply did not know what type of roof was agreed upon by the parties:

> In this case, the discussions of what type of roof, materials, and installation occurred between Dixie Roofing (Bell) and J. Minos Simon. Anita Simon was not involved in those negotiations. Mr. Simon opted for the roof with a 12 year manufacturer's warranty and a 5 year workmanship warranty. From the evidence, the options were explained to Mr. Simon through the bids. Furthermore, Dixie Roofing provided the labor and materials for the construction of the roof and completed the construction as per the bid. From the testimony adduced, Dixie Roofing saved the Simons some expenses by reusing the metal flashing that was in good condition. Dixie also issued a warranty on the workmanship.
>
> From the evidence as presented, it is the determination of this Court that several factors such as continued maintenance by the owners, weather conditions, etc. all could have contributed to the leaks. Furthermore, the timing of which certain conditions such as the mold and moisture problems occurred is unknown. Likewise, the owners of the property did not take any steps to properly maintain roof and its components. Again, Lamar Bridges testified that he, as manager/maintenance for Pine Plaza, never checked on the roof and never cleaned the gutters. He did not notice repair work being done on the property.

In this appeal, Ms. Simon disputes these factual conclusions and contends the trial court erred in certain evidentiary rulings.

In her first two assignments of error, Ms. Simon contends the trial court erred in qualifying Richard Bell, the owner of Dixie Roofing & Sheet Metal, as an expert but failing to similarly qualify her roofing contractor, Eddie Randall. Mr. Bell's bias as a party witness was obvious. Nevertheless, his qualifications, expertise, and

2

educational background in the commercial roofing business were without question, and he has been qualified as an expert in previous cases. By contrast, Mr. Randall is primarily a residential roofer who has done some commercial work, but only as an employee of someone else. He also has no formal training in commercial roofing. "A district court's decision to qualify an expert will not be overturned absent an abuse of discretion. [*Merlin v. Fuselier Constr.,* Inc., 00-1862 (La.App. 5 Cir. 5/30/01), 789 So.2d 710]; *State v. Castleberry*, 1998-1388 (La. 4/13/99), 758 So.2d 749, 776." *Cheairs v. State ex rel. Dep't of Transp. and Dev.*, 03-0680, p. 6 (La. 12/3/03), 861 So.2d 536, 541. We find no abuse of discretion in this instance.

Ms. Simon next alleges error in the exclusion of certain business records and a video made of the Pine Plaza roof in 2010 and narrated by Mr. Randall. The record before us shows the trial court determined that the records were offered without proof of a proper foundation sufficient to overcome Dixie's hearsay objection. The video was excluded as lacking in relevancy and probative value, given that it was made in 2010, after three hurricanes and seven years after the roof was completed. Our review of the evidence offered by Ms. Simon reveals no abuse of the trial court's discretion.

Finally, Ms. Simon contends the trial court erred in its factual conclusions. The standard of review which governs our determination of factual disputes is the manifest error or clearly wrong standard. Our consideration of the evidence presented herein reveals no manifest error in the conclusions reached by the trial court. In other words, the court's factual findings are not clearly wrong. The record is replete with evidence of a lack of maintenance by the property owner, air conditioning equipment problems on the roof, and weather occurrences. Ms. Simon did not make a warranty claim in an effort to seek repair of the roof. In fact, she had very little communication

3

with Dixie personnel to inform them of problems with the roof or her reasons for failing to pay the invoice due. The trial court was unable to determine if the leaks were caused by the fault of Dixie or even if leaks occurred immediately subsequent to the performance of Dixie's work.

While we are sympathetic to the circumstances Ms. Simon was faced with, including the recent death of her husband, the ongoing litigation with Pine Plaza's insurer regarding coverage for the hail storm damage, and bitter financial and succession disputes with Mr. Simon's children, we find no error in the trial court's conclusion that Ms. Simon failed in her burden of proof.

Accordingly, we affirm the judgment of the trial court. Costs of the appeal are assessed to Ms. Simon.

**AFFIRMED.**

This opinion is NOT DESIGNATED FOR PUBLICATION. Uniform Rules—Courts of Appeal, Rule 2–16.3.

4